UNITED STATES of America, Appellee,

v.

Richard W. McLEAN, Appellant.

No. 82–5044.

United States Court of Appeals,
Fourth Circuit.

Argued July 19, 1982.

Decided Sept. 8, 1982.

Rehearing Denied Oct. 19, 1982.

Russell L. McLean, III, Waynesville, N. C., for appellant.

Max O. Cogburn, Jr., Asst. U. S. Atty., Asheville, N. C. (Charles R. Brewer, U. S. Atty., on brief), for appellee.

Before RUSSELL, WIDENER and HALL, Circuit Judges.

PER CURIAM:

Richard W. McLean appeals his conviction under 16 U.S.C. § 403h–3 for carrying a loaded uncased weapon in the Great Smoky Mountains National Park in violation of 36 C.F.R. § 2.11(a). He admits that he was carrying the weapon, but contends that the area in which he was charged with carrying a weapon consisting of a 44,400 acre tract called the Fontana Addition never became part of the park. He asserts that the agreement by which the Department of Interior acquired title to the land constituted a "purchase", and that the park's enabling act provided that land, even though earmarked for inclusion in the park in the statute creating the park area, could not be purchased, but could be acquired only through public or private donation. *See* 16 U.S.C. § 403 (1974). He argues that the district court accordingly erred in denying his motion to dismiss for want of subject matter jurisdiction. We affirm.

In 1926, Congress enacted 16 U.S.C. § 403, which designated land to be included, when acquired, in the Great Smoky Mountains National Park. The Act, however, provided that the "United States shall not purchase by appropriation of public moneys any land within the aforesaid areas, but that such land shall be secured by the United States only by public or private donation." *Id.* The Fontana Addition fell within the designated area, but the United

States did not acquire title to it until 1942, when the Addition was transferred to the Department of Interior by the Tennessee Valley Authority (TVA).

The TVA sought in 1942 to build a lake in the Addition. The proposed lake, however, threatened to cut off over two hundred families' only means of egress as provided by a highway built with county bonds. To relieve this objection to the proposed lake, the state, the county, the TVA, and the Department of Interior entered into an agreement, under the terms of which the state gave TVA $100,000 to purchase the property, the TVA gave Swain County $400,000 to retire the outstanding bonds, and promised to transfer to the Department of Interior, subject to a flood easement, title to the property, and the Department of Interior agreed to receive the property for inclusion in the park, and to build a new road to replace the one flooded by the lake.*

The Supreme Court in *TVA v. Welch*, 327 U.S. 546, 66 S.Ct. 715, 90 L.Ed. 843 (1946), upheld the TVA's purchase, but apparently did not consider the Department of Interior's role in the transaction. *See* 327 U.S. at 556, 66 S.Ct. at 719 (Reed, J., concurring). Defendant contended that the Department's participation in the agreement made it a purchaser. The District Court disagreed, finding that only the TVA had purchased the property in question, that its purchase was upheld in *Welch*, and that its transfer to the Department of Interior of such property was a permissible "public donation."

We find the ruling of the District Court correct, and, for the reasons set forth in its opinion, we affirm. Any responsibility undertaken by the Department of Interior in the agreement was for the purpose of assisting the TVA in carrying out its statutory duties, and not in consideration for the interdepartmental transfer. As we hold that the Fontana Addition is a part of the park, it follows that defendant was in the park when apprehended with an uncased

firearm. Accordingly, the judgment of conviction is

AFFIRMED.

---

* The terms of this agreement are set forth in *TVA v. Welch*, 150 F.2d 613, 615 (4th Cir. 1945), *rev'd.*, 327 U.S. 546, 66 S.Ct. 715, 90 L.Ed. 843 (1946).